Wagner Boston, LLC, et al. v. Richard A. Davey, et al. Thank you, Your Honor. I'm Henry Dinger, and I represent Van Wagner in this appeal, and I would request to reserve three minutes for rebuttal. Okay. The only question before you on this appeal concerns subject matter jurisdiction. You're not asked on this appeal to decide the ultimate question, whether the regulations that Van Wagner challenges violate the First Amendment. And the only issue you need to address to decide this appeal is standing, which is the only basis on which the district court granted the motion to dismiss. Van Wagner challenges regulations that control essentially every aspect of its outdoor advertising business. Van Wagner must apply for a license to engage in that business, as well as a permit for every sign it seeks to display in Massachusetts. Both license and permits must be renewed each year and can be revoked by the director at any time. Van Wagner plausibly alleges that those regulations give to a single state official discretion over permits and license that is effectively standardless. The law is very clear that a party subject to such regulations has standing to challenge them as a standardless prior restraint. In the city of Lakewood, the Supreme Court said that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he has applied for a license. Counsel, what is there on the face of that statute that suggests that the content of the advertisement is the least relevant? I mean, all of those standards seem to go to aesthetic, environmental considerations, possible impact on public safety. What is there that in the language raises any concerns that the content of the advertising might be a relevant concern for the bureaucrat who has to issue the permit? It is because, as is the case in the city of Lakewood, which also didn't require the mayor to consider the content of the newspapers. Well, there were no standards. There were no standards. Here, standards are set forth in considerable detail, and none of those, it would appear, have anything to do with content. The problem is the standards are so broad that they can effectively mask an official decision which is based on content. The regulations require that notice be given to anybody who owns property within 500 feet of a proposed sign, of the proposal to put a sign there, and the standard is so broad. Basically, the director can decide, can reject a sign permit application because he finds the sign unsuitable for the area. There is no definition of suitability. The regulation goes on to identify a vast number of factors that the director can take into account in such breadth that they encompass essentially the entire police power. The director may consider, among other factors, the list is not exclusive, the health, safety, and general welfare of the public. So, it basically allows the director to say, I find a sign unsuitable, or I find that a particular company, it is contrary to the public interest to grant a license or to grant a permit for this sign. And if the director receives complaints, and people complain about signs all the time, he can decide to revoke the permit at any time under the regulations, finding it unsuitable. So, if the director changes his aesthetic criteria or more likely gets responses from the public complaining about the content of a sign, the director can act on that, not commenting on the content of the sign, but invoking these broad general powers. And it is precisely the ability, the discretion to take any action without adverting to content objections, which makes this standardless. Which brings us within the scope of the city of Lakewood case, where the court said, look, in the real world, even if the regulations make no provision for content, the mayor is going to know what's in the newspaper, just as the director will know, because people will bring it to the director's attention and anybody can drive past the sign what the content is. And if it becomes politically expedient to punish the speaker or punish the speech, it is easy for the director to do so. It is that vice which prompted the Supreme Court and many other cases to say that a system of standardless prior restraint, a system where the government has to approve, give you a license before you speak, without clear and objective standards. It is alleged in this case that in light of the nature of the statute, that some sort of self-pleasing, self-censorship induced by the very generality of the statute has taken place. Because that is a concern in this area, that the generality of the statute might induce a degree of self-censorship, which is inappropriate. Do you even allege that that's taking place? Your Honor, the answer is there is no specific allegation that Van Wagner has pulled its punches for fear of offending the director. But Van Wagner is in this business. It is just naive to think that Van Wagner is not going to take into account what it perceives to be the attitudes and the predilections of this single official who has life or death control over its business in Massachusetts. Let me ask Judge Lopez a question that bears on Judge Lopez's question. Does City of Lakewood, in your view, require a showing that self-censorship has taken place, or merely a showing that a risk of self-censorship reasonably can be found to exist? The latter, Your Honor. There's no reference in City of Lakewood that the Cleveland Plain dealer was pulling its punches or was tempted to pull its punches. The First Amendment doesn't exist merely to protect the timid, in any event. But don't the threats in this area have to be real and substantial? I mean, how do we make a judgment, or I guess it's your position that courts are only supposed to look at the language of the statute at issue, and on the basis of that language, make a judgment that the threats to First Amendment interest are real and substantial? Is it nothing more than an analysis of the language? Is that all that comes into play? It is the language of the statute. If it is plausibly alleged that the statutory scheme gives the government standardless discretion to approve or disapprove speech, at least under the circumstances which are present here as well, the circumstances in City of Lakewood, which made provision for annual renewal, and here we have provision for revocation at any time, yes, if that's the circumstance, the Supreme Court in the City of Lakewood case said that the risk of both censorship and self-censorship is inherent, and that the speaker has a legally protected interest not to be subject to that kind of legal regime. Well, in City of Lakewood you had a mayor, a quintessentially political position, who could be offended by things that a newspaper says about him or her, and hence may limit the newspaper racks that are available to that offending newspaper. Here you have a bureaucrat, not a political figure, enforcing a statute which, unlike in City of Lakewood, is loaded with standards, none of which have to do with content. Doesn't that all affect the real and substantial threat that this statute poses to First Amendment interest, unlike in City of Lakewood? I would disagree with that, Your Honor. I think that the fact that there are so many factors listed in these regulations doesn't mean it is any less standardless than in the City of Lakewood case. There are so many standards, and they are drafted in such broad terms that it becomes impossible to prove that there was, unless the directory is very indiscreet, almost impossible to prove that there has been improper discrimination. And the risk of self-censorship. Counselors, in terms of the relevance of content, the way this scheme works, once you get a permit for an outdoor advertising sign, your client is free to change the content of that without any further review. Once it's determined that the aesthetics, public safety concerns are addressed, the content is irrelevant. Your client can change that at will, isn't that correct? Well, we don't have to get pre-approval, just as the newspaper didn't have to get pre-approval of the mayor for its content in City of Lakewood. But the permit is subject to revocation at any time under standards that are every bit as broad as the standards for issuing the permit in the first place. And it is not as if the content of the sign is secret. The director can see the sign whenever he or she wants, and the neighbors, the people who live or work in the area, if they object to the sign, rest assured, will bring it to the director's attention. I mean, if you have ever attended a zoning board or planning board meeting in a city in which a local sign permit is under consideration, you will see that people object to the content of signs all the time. And it is, I suggest, naive to think that even an official within the Department of Transportation, within a political administration, will not be affected by those kinds of considerations. In addition to the power of revocation, however, this statute potentially has another voice, and that is that the permits must also be renewed annually, subject to what you allege is a standardless exercise of discretion. So displeasing the official who administers the statute runs a risk of consequences in that regard as well. That annual renewal provision was present in City of Lakewood, and the Supreme Court felt that that was a materially contributing factor to the First Amendment, the alleged First Amendment violation there. That's absolutely right, and I'll reserve the rest of my time. Good morning, Your Honors. May it please the Court. The analysis in this case should start from the general presumption against entertaining facial challenges to a law. This is a rule of restraint that is based on the principle that courts should avoid reaching constitutional questions if it is not necessary to decide them. The plaintiffs turned this principle on its head when they asked this Court to find that they have standing where they have not only failed to allege actual injury or any risk of future injury, but where the factual record in this case affirmatively shows that the risk of censorship that they say is inherent in the regulation has not materialized during the many years that this regulation has been in effect. How is this case distinguishable from City of Lakewood? It's distinguishable, Your Honor, because Lakewood was based on a confluence of factors that are not present in this case. Why aren't they present? The allegation is standardless discretion. That's common to both cases. The discretion is vested in a public official. That's common to both cases. In both cases, the permits must not only be issued but are subject to renewal at periodic intervals, again subject to essentially the same standardless discretion. In both cases, the plaintiff is a purveyor or conveyor of protected expression. So what are the material differences? The material differences, Your Honor, City of Lakewood was about the risk of content-based censorship, and the material differences are a newspaper can easily be tied to the content of a particular message. Is there anything in City of Lakewood that indicates to you that that case should be somehow limited to newspapers? No, absolutely not, Your Honor, but the identity of the speaker is relevant because it goes to the risk of censorship. It's relative, but not this circuit because we haven't had the occasion, but the other courts of appeals have fairly routinely applied City of Lakewood to billboard purveyors. Your Honor, those cases involved, they all involved situations where there was at least some showing of actual injury, and it is a fact-specific inquiry, and to the extent those cases find that Lakewood establishes a categorical rule that all plaintiffs have to do is allege unbridled discretion, I would say they were wrongly decided, and it's directly contrary to the language in Lakewood that says that not all laws involving discretion are subject to a facial challenge. Yes, that's true. It's only laws involving unbridled discretion that restrict constitutionally protected expression. That quoted language was used in that context, and there is no question that these billboards involve constitutionally protected expression, perhaps not the same type or genre of expression that one would find in a newspaper, but there is no question that billboards are constitutionally protected expression. I read Lakewood to have made that statement in the context of the law must create a real and substantial threat of censorship based on content of speech. No, no. The City of Lakewood Court made that observation in response to an observation in the dissent, which said that, well, this same ordinance gives the mayor discretion to give permits for placing soda machines. on municipal property. So what is the majority going to do? Is the majority going to say that the soda machines have the same right as the Cleveland Plain dealer? And the majority responded to that portion of the dissent with the sentence that you've quoted saying, no, we're only dealing here with freedom of expression. I still think, Your Honor, that the line has to be drawn where the scheme raises the risk of content-based censorship, and I would argue that our case is more akin to the building permit example that was given by the majority. The majority said that such a scheme could be entirely standardless, and even if it did raise the risk that a building inspector could disfavor certain speakers such as an unpopular newspaper company, that that's too blunt of a censorship instrument. So why doesn't this raise a risk of censorship? It doesn't, Your Honor. So you put up, so number one, the owner of the billboard has to make a decision, all right, if I get a permit and put up this billboard which is unpopular, all right, it's going to advocate an issue which the administration is opposed to or which a substantial segment of the neighbors may be opposed to, all right. Am I going to get in trouble because I've got lots of other billboards? Do I want to alienate the director? Secondly, if I go ahead, if I say, well, okay, I'm not going to be cowed into not putting it up, I go ahead and put it up, he can revoke it under this broad discretion where he essentially doesn't have to give any reason. He can just say he's decided a billboard in this place is not consistent with public safety or in the interest of the public. Or third, if he doesn't want to be that open about it, he can take it out on me because when I apply for other permits or apply to renew this permit, he has no standards at all and can simply deny it. So I'm not going to put in jeopardy my whole operation. It's easier for me to self-censor and not put up the unpopular billboard. That's the risk that the plaintiffs are alleging, all right, exists here. Now, it may be in a merits trial that it could be found that this discretion isn't as broad as they say or that the risk isn't as serious as they say, but we're talking about what allegation do they have to make to get into court to get by the most basic kickoff point of standing. I understand that, Your Honor, but I would argue that the risk is not substantial because they have not come up, because the content is constantly changing, they have not come up with a single instance where the content of an unpopular ad has been tied to the advertising company that is simply leasing the space. Counsel, you're getting at something that troubles me. Given the procedural posture of the case, there are references in the briefing to the experience of this particular plaintiff under this regime, and the experience apparently has been that they have been uniformly successful in getting all the permits they need for their billboards. When they haven't been, I guess there have been a few exceptions, it's because they didn't give adequate notice to abutting landowners, so that to the extent that they raise concerns that they could be subject to the unbridled discretion of an administrator making content-based decisions, their experience belies that concern. But is any of that, is their actual experience, is that relevant to the standing determination that has to be made here? It is relevant, Your Honor, and that's one of the distinctions between this case and Lakewood. In Lakewood, there is no factual record at all showing the actual impacts of the ordinance because the plaintiffs had essentially brought a pre-enforcement challenge. In this case, we do have a record showing the actual impacts, and it does show that the plaintiffs have for many years continued to apply for permits and enjoyed nothing but success, and that history is relevant because it proves that there's the absence of censorship and the absence of self-censorship. And as even the Lakewood majority agreed, courts can presume that an official will act in good faith if a well-established administrative practice has developed as it has here. And it's hard to imagine that the Lakewood majority would have decided the case the same way if it had a record before it that the newspaper had, in fact, applied for dozens of permits from the mayor and had not wanted them denied. So, again, just to reduce what you said to its essence, that factual material is entirely appropriate to consider, even given the procedural posture of this case. Is that correct? It absolutely is, Your Honor. It is the plaintiff's burden to put facts in the record to establish standing. And these facts are uncontroverted, and it is relevant. And Lakewood, I believe, would not come out the same way on the same facts that we have here. So the inquiry here has to go beyond just the language of the statute at issue. Is that your position? It is my position, Your Honor. I contested standing below. I put these facts into the record, and then it became Van Wijners' burden to rebut those facts, and they are unrebutted. And so this court must consider the history of Van Wijners' success in obtaining these permits when it assesses standing. And this regulation, in almost its identical form, has been in place in Massachusetts for over a decade, as has the renewal requirement. And Van Wijners could not come up with a single instance where the content of an ad was tied to an advertising company as opposed to the customer who is actually advertising its products. Van Wijners does not itself advertise any product, and there is no instance of any retaliation made either by MassDOT or any of its predecessor agencies. An additional distinguishing factor between this case and Lakewood is, as Your Honor mentioned, there are standards in this regulation that confine the director's discretion, the ordinance in Lakewood contained. How do they confine it? They're in purely precatory language, aren't they? I'm sorry? How do they confine the discretion? They're in purely precatory language. The director may consider, among other factors, to specify. I would say that that's not unusual. It's often not possible to give an exclusive list of standards. No, but it's certainly possible to say shall instead of may. Legislatures do that quite a bit. That's fair, Your Honor. But the only factor on which Van Wijners hangs its hat is the general welfare, the public factor. And that factor does have to be read in light of the other specific factors that follow that all go to the location of the sign and its physical characteristics. Moreover, the meaning of this regulation is informed by the overarching purposes of the statute, which are aesthetics and traffic safety. And so contrary to Lakewood, in which the ordinance contained absolutely no standards at all to confine the mayor's discretion, here we do have a list of factors. There's a requirement of a statement of reasons. And there's the opportunity for hearing and judicial review. And I would say that those factors together eliminate any minimal risk there is of censorship. In this respect, I did actually want to correct an error in my brief. On page 20, I say that the ordinance in Lakewood provided no opportunity for review. In the dissenting opinion at page 793, note 13, they say that, in fact, the mayor's decision could have been appealed to the city council, followed by an appeal to the state court. And I do apologize for that error. However, the fact remains that there were no standards whatsoever in the ordinance to guide the mayor's initial decision, and as a corollary, no standards to apply on appeal. So in the end, it would be an unprecedented expansion of standing to allow plaintiffs to bring a facial challenge on these facts. If they ever have a permit denied in the future, they will have the opportunity to seek judicial review and raise an as-applied challenge, if appropriate, at that time. If this court finds that Van Miner has standing, it should still order the district court to abstain under Pullman. The plaintiff's assertion that the state law claim is simple is belied by the amount of paper they devoted to the claim. Why shouldn't we let the district court pass on that in the first instance? I think the issue can be decided on the record before you. Well, the question isn't whether it can be decided. The question is whether it should be decided. Normally, this court doesn't operate as a court of first instance. Normally, we let parties brief and argue issues, and we have the benefit of decisions by thoughtful district judges to help narrow the issues and guide us. Why shouldn't we follow that same practice here? You could, Your Honor, but as a matter of judicial economy, the issue was fully briefed below. It is teed up for you to decide the question, and this court may affirm a lower court decision on any ground that's presented in the record. So I would say that it is proper for this court to decide the question. And in the plaintiff's PI motion, they actually urged the district court to decide the state law claim first, which, of course, our position is the court has no power to do under the 11th Amendment. But this state claim is unsettled within the meaning of Pullman. It's never been decided by Massachusetts court, and it does involve a very recent statute that implicates an important state power. It's a power that's so important that it's incorporated in the state constitution. So if this court has any doubt about MassDOT's authority to adopt these regulations and if it finds that the plaintiffs have standing, then I would ask that it order the lower court to abstain in order to allow the state courts to resolve the question in the first instance. Before you step back, Mission, given Van Wagner's record of success with the permits, why do you suppose someone in their position would bring an action like this? Is it just carrying water for the advertisers? I can only speculate, Your Honor. I'm inviting you to. Well, I would point the court to the complaint, which is at the joint appendix at page 9, and if you read the complaint, almost the entire complaint is devoted to the state law claim. So it appears to me that the federal claim was inserted as secondary to the state law claim, and that's just my speculation. Thank you. Very briefly, Your Honor. In response to Judge Howard's question at the very end, the record is silent as to why Van Wagner brought the suit. I can shed some light. Van Wagner hasn't been doing business in Massachusetts for that long, since about 2008. When several years later the director proposed these particular regulations, which substantially broadened the unilateral power of a single state official, Van Wagner submitted extensive comments on that. And without getting into it, because it really doesn't have anything to do with the case, Van Wagner feared that this was not going to be an administration with whom it was going to be easy to work. Let me address some of the points that Ms. Shin raised. It is not true that Van Wagner does not appear on the signs that it has. If you look, and there are several in Boston, Van Wagner puts its name just underneath most of the billboards, at least most of the billboards that I have seen. So there is certainly an opportunity for the public to associate a particular sign and the message on that sign not only with the advertiser or the organization that sponsors the sign, but also with Van Wagner. Ms. Shin, I think, suggested that all of the billboard cases from other circuits that granted standing involved situations where there was some kind of actual injury. I think that is not the case. Certainly there wasn't any denial of a permit in the city of Lakewood, but I would also draw the Court's attention to the Lamar advertising case, a Second Circuit case written by then Judge Sotomayor. In that case, there had been some denials, but the regulations under which the permits had been denied was amended, and there had been no denials under the amended ordinance. But the billboard company said that it planned to erect billboards that conformed to the objective requirements, which it did not challenge, but was still subject to the unbridled discretion of the permit war, and the Second Circuit said that there was standing invoking the city of Lakewood. Counsel, is it your position that the evidence that your opponent put in the record about the success of your client in obtaining these permits in the very limited circumstances under which they did not get the permits, she says that's uncontested. Is it your position that in terms of your requirement to establish standing, to establish an injury that supports a standing claim, that none of that is relevant? It is not relevant. Why is it not relevant? Because the injury is the risk that is created simply by the regime of standardless prior restraint. And so if that risk is belied by the factual record that your opponent has established, that still remains irrelevant? Because things can change, Your Honor. The director can change. Ben Wagner can take on a new customer that's advertising alcoholic beverages, sugary soft drinks, any kind of unpopular product. The fact that we have not incurred the wrath of the director yet doesn't mean we're not subject to that risk in the future. Well, how are courts supposed to get a handle on this real and substantial threat to First Amendment interests? I mean, other than by creating the record that your opponent has created, how do we get a handle on it? You don't have to get a handle on it, Your Honor, because the law is that simply being subject to a regime of standardless prior review when the issue is speech as opposed to just a building permit, that that is itself an injury, in fact, that gives rise to standing. We can argue below, if you remand the case, about whether or not there is justification for these regulations or whether there is narrowing constructions that can be placed upon it. You're not here to decide the merits of the case, but clearly we have standing to bring our case. Thank you. Ms. Shin and Mr. Dinger, when I read the briefs, I found them to be helpful, and I thought that we might have a robust and enlightening argument, and you haven't disappointed me, so I just wanted to express my appreciation.